## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

SHARK RIVER CLEANUP COALITION,

    Plaintiff,

v.

TOWNSHIP OF WALL AND ESTATE OF
FRED MCDOWELL, JR.,

    Defendants.

---

Case No. 3:17-cv-8049 (BRM) (LHG)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

    Before this Court is Defendant Township of Wall's (the "Township") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 24.) Plaintiff Shark River Cleanup Coalition ("Plaintiff" or "Shark River") opposed the Township's Motion (ECF No. 41), and the Township replied (ECF No. 49). Also before the Court is Plaintiff's Motion for Summary Judgment. (ECF No. 25.) The Township and Defendant Estate of Fred McDowell, Jr. ("McDowell") (together, "Defendants") opposed Plaintiff's Motion (ECF Nos. 40, 42), and Plaintiff replied (ECF No. 51). Also before the Court is McDowell's Cross-Motion for Summary Judgment. (ECF No. 30.)[1] Having reviewed the filings submitted in connection with both Motions

---

[1] On January 12, 2021, Plaintiff sent correspondence to the Court asserting no reply or opposition brief was necessary in response to McDowell's Cross-Motion moving brief (ECF No. 30) or its opposition brief to Plaintiff's Motion (ECF No. 42) because both were duplicative of the Township's arguments. (ECF No. 52.) Plaintiff also argued both briefs were untimely. (*Id.*) Plaintiff and McDowell subsequently submitted correspondence to the Court arguing their respective positions on this issue. (*See* ECF Nos. 53–57.) Because McDowell's arguments and positions are fundamentally similar to the Township's, and because the parties seek the same substantive relief, the Court will, for efficiency purposes, consider McDowell's Cross-Motion in this Opinion.

and the Cross-Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons below and for good cause shown, Plaintiff's Motion for Summary Judgment is **DENIED**, the Township's Motion for Summary Judgment is **GRANTED**, and McDowell's Cross-Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND[2]

### A. The Parties

Shark River is a "watershed watchdog organization" whose mission is to enhance and protect the water quality and habitats of the Shark River Estuary.[3] (ECF No. 1 ¶ 6.) The Township is a municipal corporation of the State of New Jersey, located at 2700 Allaire Road, Wall, New Jersey 07719. (ECF No. 24-11 ¶ 10.) McDowell is the record owner of property located at 1401 Schoolhouse Road and Route 33, Wall, New Jersey 07719 (the "Property"). (*Id.* ¶ 16.)

### B. Factual Background[4]

The Property is approximately 484.97 acres, twenty-five of which are used for a sand and gravel mining operation. (*Id.* ¶¶ 20–21.) On October 13, 1988, a Declaration of Taking "was recorded in the Monmouth County Clerk's Office, which granted a permanent easement for a pump station, a permanent [subterranean] sewer easement[,] and a temporary construction easement across a portion of the Property in favor of Wall Township for the purposes of constructing a

---

[2] This background is taken primarily from the parties' respective statements of undisputed material facts, pursuant to Local Civil Rule 56.1. (*See* Township's Statement of Undisputed Material Facts (ECF No. 24-11); Plaintiff's Statement of Undisputed Material Facts (ECF No. 25-1); and McDowell's Statement of Undisputed Material Facts (ECF No. 30-2).) To the extent the parties set forth identical material facts, the Court will cite only to the Township's Statement of Undisputed Material Facts and the relevant paragraph number.

[3] According to Plaintiff, the Shark River Watershed covers "an area in excess of [twenty-three] square miles" and "includes land within the municipalities of Tinton Falls, Colts Neck, Howell, Wall, Neptune, Neptune City, Avon-By-the-Sea, Belmar[,] and Lake Como." (ECF No. 1 ¶ 7.)

[4] The Court recites only those facts necessary to resolve the pending Motions and Cross-Motion.

sanitary sewer system" (the "Easement"). (*Id.* ¶ 24.) The Easement includes "a [twenty-five] foot strip of land on the Property running 3.15 miles long, containing approximately 3.5 acres or 152,460 square feet[.]" (*Id.* ¶ 26.) "Running north of the Easement, along the northern border of the Property, is a tributary of Shark River, commonly referred to as Shark River Brook[.]" (*Id.* ¶ 33.)

Following its construction, soil over the Easement's sewer system began to erode and wash out. (*Id.* ¶ 32.)[5] In Spring 2015, a hiker discovered the erosion and subsequently alerted Plaintiff. (*Id.* ¶¶ 51–52.) In May 2015, the hiker brought Plaintiff's President to the site, who then reported the erosion and accompanying exposed sewer pipe to Plaintiff. (*Id.* ¶¶ 54–56.) On April 5, 2016, Plaintiff, through its attorney, sent the Township a request for records pursuant to the New Jersey Open Public Records Act, N.J. Stat. Ann. § 47:1A-1, *et seq.* ("OPRA"). (*Id.* ¶ 58.) Through the OPRA request, Plaintiff sought all documents evidencing (1) the creation of the Easement on the Property, (2) the installation of the sewer on the Property, and (3) the maintenance of the sewer on the Property from 2000 to present. (*Id.*; *see also* ECF No. 24-6 at 126.) The Township, however, did not produce the requested documents. (ECF No. 24-11 ¶ 64; *see also* ECF No. 24-6 at 127.)

On October 4, 2016, Plaintiff sent the Township, McDowell, the New Jersey Department of Environmental Protection ("NJDEP"), and the United States Environmental Protection Agency ("EPA") a Notice of Intent to Commence Suit (the "Notice") under the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. § 1251, *et seq.* (ECF No. 24-11 ¶ 76.) Plaintiff's Notice detailed the pollution and erosion problems facing the Shark River Watershed and described the alleged CWA violation as follows:

---

[5] Plaintiff appears to disagree with this statement because it excludes information regarding the alleged "continuing release of washed out sand from the sanitary sewer easement into the Shark River Brook[.]" (ECF No. 41-1 ¶ 32 (quoting ECF No. 1 ¶ 22).)

The installation of the sanitary sewer line disturbed the vegetative cover of the sand in which the subterranean pipe was installed. That disturbance and the obvious lack of maintenance of the [E]asement has created a dangerous condition. Several sections of the sewer pipe have been undermined and are 'flying' in the air without support. (Photos available upon request). This condition threatens the structural integrity of the active sanitary sewer pipe within a short reach of the Shark River Brook. Furthermore, in other locations, due to the installation of the pipe and failure to maintain the [E]asement and the activities being conducted by the owner of the [P]roperty, large areas of sand have 'washed out' and infiltrated and discharged into the Shark River Brook. These conditions are violations of the [CWA]. It also has damaged and threatens to further damage the Shark River Watershed. Indeed, despite the April 2016 OPRA Request alerting Wall Township, no one has taken any steps to rectify the precarious situation. . . .

The unmitigated historic and continuing release of washed out sand from the sanitary sewer [E]asement into the Shark River Brook and the threatened release of sanitary sewer effluent from the sanitary sewer pipe all constitute un-permitted discharges of pollutants into the Shark River, a navigable waterway protected from such discharges under the [CWA].

(*Id.* ¶ 80; *see also* ECF No. 24-5 at 99–105.) Following the Notice, McDowell sent a letter to Plaintiff's attorney "requesting copies of the pictures referred to in the Notice and any information you can give me regarding where the photographs were taken." (ECF No. 24-11 ¶ 84 (internal quotation marks and citation omitted).) McDowell, however, did not receive a response. (*Id.* ¶ 85.) Moreover, the Township maintains it sent multiple employees to the Property on several occasions to the Property but was unable to find the location of the alleged violation. (*Id.* ¶¶ 86–92.)[6] The Township also asserts it, like McDowell, sent Plaintiff's attorney e-mails requesting pictures and the locations of the site, but did not receive a response. (*Id.* ¶¶ 96–97.)[7] Finally, Defendants allege

---

[6] Although Plaintiff agrees the Township made some of these requests, during which the site was not discovered, (*see, e.g.*, ECF No. 41-1 ¶¶ 86–88, 91), it maintains the site and accompanying exposed pipe were easily discoverable to anyone who walked the entire Easement (*id.* ¶¶ 89, 92).

[7] Plaintiff disagrees with this fact and asserts the record does not establish its attorney received this e-mail. (ECF No. 41-1 ¶¶ 96–97.)

McDowell sent another letter in December 2016 stating "it is imperative that I have copies of your photos and the location where they were taken to continue our investigation[,]" but did not receive a response. (*Id.* ¶¶ 99–100; *see also* ECF No. 30-2 ¶¶ 82–83.)[8]

On October 10, 2017, Plaintiff filed its Complaint against Defendants alleging a single violation of the CWA. (ECF No. 1 ¶¶ 24–26.) On November 17, 2017, Township officials located the site of the alleged violation. (ECF No. 24-11 ¶ 145.)[9] The Township subsequently "began doing research to determine the best way to address the situation and to develop a plan." (*Id.* ¶ 147.) An initial conference with the Court was held on February 28, 2018, during which Plaintiff's attorney responded to Defendants' requests for additional information as to the site's location. (*Id.* ¶¶ 153–54.) On March 14, 2018, the Honorable Lois H. Goodman, U.S.M.J. ordered: (1) the Township to provide Plaintiff with a proposal on remediation and maintenance of the site; (2) Plaintiff to be given access to the Property and site for inspection of the proposed maintenance; and (3) Plaintiff to produce its photographs of the site. (ECF No. 6.) On August 31, 2018, the site's restoration plans were sent to Plaintiff's attorney, and, on September 19, 2018, the NJDEP approved an emergency request to permit the restoration. (ECF No. 24-11 ¶¶ 167, 169–70.) The restoration began on October 3, 2018 and was completely finished on February 21, 2019. (*Id.* ¶¶ 174–76.)[10]

---

[8] Plaintiff disagrees with this fact and maintains the record does not establish its attorney received this letter. (ECF No. 41-1 ¶¶ 99–100.)

[9] Plaintiff "does not dispute this fact but points out that it is contained in a Declaration served after the end of discovery and accordingly was never able to be tested by way of deposition." (ECF No. 41-1 ¶ 145.)

[10] Plaintiff does not dispute this fact but asserts "Defendants did not take any action to address the contaminated soils that discharged into the Shark River." (ECF No. 41–1 ¶¶ 174–76.)

## C.    Procedural Background

On November 15, 2017, McDowell answered the Complaint and filed a cross-claim for contribution and indemnification from "any and all defendants and third party defendants[.]" (ECF No. 3.) On December 13, 2017, the Township answered the Complaint. (ECF No. 5.) On September 11, 2020, the Township filed a Motion for Summary Judgment. (ECF No. 24.) Plaintiff opposed the Township's Motion (ECF No. 41), and the Township replied (ECF No. 49). Also on September 11, 2020, Plaintiff filed a Motion for Summary Judgment. (ECF No. 25.) The Township and McDowell opposed Plaintiff's Motion (ECF Nos. 40, 42), and Plaintiff replied (ECF No. 51). On September 29, 2020, McDowell filed a Cross-Motion for Summary Judgment. (ECF No. 30.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

This governing standard does not change when the parties file cross-motions for summary judgment. *Hartford Cas. Ins. v. Peerless Ins.*, Civ. A. No. 10-6235, 2016 WL 5723659, at *4–5 (D.N.J. Sept. 30, 2016). Indeed, "[t]he court must consider the motions independently, and view the evidence on each motion in the light most favorable to the party opposing the motion." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468–69 (D.N.J. 2002) (citations omitted); *Arzadi v. Evanston Ins.*, Civ. A. No. 17-5470, 2018 WL 747379, at *2 (D.N.J. Feb. 7, 2018).

## III.   DECISION

The CWA "authorizes a citizen . . . to bring suit in federal court against any person who is alleged to be in violation of 'an effluent standard or limitation' as defined in the Act or 'an order issued by the [EPA] Administrator or a State with respect to such a standard or limitation.'" *Pub. Int. Rsch. Grp. of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1246 (3d Cir. 1995) (quoting 33 U.S.C. § 1365(a)(1)). Such an action, however, may not be commenced "prior to sixty days after the plaintiff has given notice of the alleged violation . . . to any alleged violator" of the effluent standard or limitation. 33 U.S.C. § 1365(b)(1)(A).

Here, Defendants do not argue Plaintiff commenced the present litigation prior to sixty days after the Notice. Rather, they argue the Notice "was defective because it failed to provide sufficient information to enable the Defendants to identify and correct the alleged violation." (ECF No. 24-1 at 33; ECF No. 30 at 25.) According to Defendants, "[n]owhere in the Notice does it give a proposed location for the [alleged violation]. Rather, the only 'location' identified in the Notice is the Easement, which is a 3.15 mile, 25-foot wide sewer easement[,] and the Property, which is a 484.97 acre heavily wooded property." (ECF No. 24-1 at 33; ECF No. 30 at 25–26.) Defendants maintain that "[a]bsent more information, it was impossible to locate [the site of the alleged violation] based solely on the Notice." (ECF No. 24-1 at 35; ECF No. 30 at 28.)

Pursuant to EPA regulations, notice under the CWA

> shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). In *Hercules*, the Third Circuit "read the regulation to require just what it says: that the citizen provide enough information to enable the *recipient* . . . to identify the specific effluent discharge limitation which has been violated, including the parameter violated, the date of the violation, the outfall at which it occurred, and the person or persons involved." 50 F.3d at 1248; *see also id.* at 1249 ("In deciding whether the plaintiffs here complied with the content requirements established under the regulation, we must consider whether their notice letter served the purpose that Congress intended: To provide the recipient with effective, as well as timely, notice."). Furthermore, "notice gives the alleged violator an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Id.* at 1246 (internal quotation marks and citations omitted). Notice pursuant to the CWA, however, does not need to include "every aspect or detail of every alleged violation" nor "every ramification of a violation." *Id.* at 1248.

As stated previously, it is undisputed the Notice provided the following details regarding the alleged CWA violation:

> The installation of the sanitary sewer line disturbed the vegetative cover of the sand in which the subterranean pipe was installed. That disturbance and the obvious lack of maintenance of the [E]asement has created a dangerous condition. Several sections of the sewer pipe have been undermined and are 'flying' in the air without support. (Photos available upon request). This condition threatens the structural integrity of the active sanitary sewer pipe within a short reach of the Shark River Brook. Furthermore, in other locations, due to the installation of the pipe and failure to maintain

the [E]asement and the activities being conducted by the owner of the [P]roperty, large areas of sand have 'washed out' and infiltrated and discharged into the Shark River Brook. These conditions are violations of the [CWA]. It also has damaged and threatens to further damage the Shark River Watershed. Indeed, despite the April 2016 OPRA Request alerting Wall Township, no one has taken any steps to rectify the precarious situation. . . .

The unmitigated historic and continuing release of washed out sand from the sanitary sewer [E]asement into the Shark River Brook and the threatened release of sanitary sewer effluent from the sanitary sewer pipe all constitute un-permitted discharges of pollutants into the Shark River, a navigable waterway protected from such discharges under the [CWA].

(ECF No. 24-5 at 101, 105.) Moreover, it is undisputed the alleged violation did "not encompass the entire [3.15 mile] Easement." (ECF No. 24-11 ¶ 83.) In opposition, Plaintiff argues it followed "§ 135.3(a) as best as possible" and "incorporated as much information that was available to [it] at that time." (ECF No. 41 at 16–18.) According to Plaintiff, it

assumed since the [E]asement had been plotted on Wall's Tax Map, it ran roughly parallel and [in] close proximity to the Shark River, was the subject to the metes and bounds description on the recorded Amended Declaration of Taking, and that there are man hole covers along the [E]asement, the parties would have the ability to walk the [E]asement and find the site.

(*Id.* at 17.) Furthermore, Plaintiff concedes

other than the description of what [its President] had seen and two static isolated pictures of the [exposed] pipe, [Plaintiff] had no information of the environmental impacts from the site. We certainly didn't know any particular dates of any discharges, other than that it had been going on for a[]long time and was ongoing. We knew that there was an exposed sewer pipe and it was flying in the air. We knew soils had washed out into the Shark River which was nearby. We knew nothing beyond that.

(*Id.*)

Notwithstanding Plaintiff's assertions that its Notice provided all the information it had available, the Court cannot ignore "the purpose of the notice requirement, which is to provide an

alleged violator an opportunity to fix any problems." *PennEnvironment v. PPG Indus., Inc.*, 964 F. Supp. 2d 429, 465 (W.D. Pa. 2013); *see also Hercules*, 50 F.3d at 1249. For example, in *Sandy Hook Watermans Alliance, Inc. v. New Jersey Sports and Exposition Authority*, Civ. A. No. 11-813, 2011 WL 2976855, at *7 (D.N.J. July 20, 2011), the court found the plaintiff's CWA notice letter to be defective, in part, because it "fail[ed] to set forth the locations from which the discharge allegedly occurred and thus, fail[ed] to properly allege that there are locations for which [the defendant was] responsible." Conversely, in *Hackensack Riverkeeper, Inc. v. Delaware Ostego Corp.*, 450 F. Supp. 2d 467, 480–81 (D.N.J. 2006), the court rejected defendant's inadequate notice argument because plaintiffs' notice pursuant to the Resource Conservation and Recovery Act ("RCRA")[11] "set forth in considerable detail" the alleged statutory violations, as well as their specific locations. *See also Fried v. Sungard Recovery Servs., Inc.*, 900 F. Supp. 758, 765 n.6 (E.D. Pa. 1995) (finding that plaintiff's notice under the Clean Air Act, which contains a notice provision nearly identical to the CWA, was "barely" sufficient, in part because it alleged violations occurred in *all* parts of defendants' building, thereby rendering "[a] more specific identification of location . . . unnecessary").

Here, the undisputed record demonstrates that following Plaintiff's Notice, Defendants requested additional information regarding the locations of the alleged violations but did not receive a response. (ECF No. 24-11 ¶¶ 84–85, 96–97, 99–100.)[12] Moreover, although Plaintiff disputes whether the entire Easement was searched (*see, e.g.*, ECF No. 41-1 ¶¶ 89, 92), the parties

---

[11] The manner by which notice under the RCRA must be given is nearly identical to the notice prescribed by the CWA. *See* 40 C.F.R. § 254.3(a).

[12] As stated previously, although Plaintiff admits it did not provide a response to McDowell's initial request (ECF No. 41-1 ¶ 85), it asserts the record does not demonstrate the subsequent requests were ever received (*id.* ¶¶ 96–97, 99–100).

do not dispute that, following the Notice, the Township made several unsuccessful attempts to locate the sites in question (ECF No. 24-11 ¶¶ 86–89, 91). The parties also agree that on November 17, 2017, after Plaintiff filed its Complaint, Township officials located the site of the alleged violation and subsequently addressed the deficiencies in the area. (*Id.* ¶¶ 145, 147.)[13] Finally, it is undisputed that restoration of the site began on October 3, 2018 and was completely finished on February 21, 2019. (*Id.* ¶¶ 174–76.)[14]

More importantly, the undisputed contents of the Notice set forth general violations of the CWA at unspecified locations throughout an over three-mile Easement. (*See generally* ECF No. 24-5.) As previously discussed, the CWA's notice provision is intended to provide "the alleged violator . . . with enough information to bring itself into compliance" with the Act. *Hercules*, 50 F.3d at 1249; *see also id.* at 1246 ("In crafting the citizen suit provision, Congress sought to 'strike a balance between encouraging citizen enforcement of environmental regulations and *avoiding burdening the federal courts with excessive numbers of citizen suits*.'" (emphasis added) (quoting *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 29 (1989))). Because the Notice failed to provide additional information regarding the specific locations of the alleged violations within the Easement, the Court concludes Shark River did not provide Defendants with enough information to bring itself into compliance with the Act.[15] Accordingly, and because the CWA's notice

---

[13] As stated previously, Plaintiff "does not dispute this fact but points out that it is contained in a Declaration served after the end of discovery and accordingly was never able to be tested by way of deposition." (ECF No. 41-1 ¶ 145.)

[14] As stated previously, Plaintiff does not dispute this fact but asserts "Defendants did not take any action to address the contaminated soils that discharged into the Shark River." (ECF No. 41–1 ¶¶ 174–76.)

[15] Plaintiff's failure to provide dates of the alleged violations also demonstrates inadequate notice. (ECF No. 41 at 17 ("We certainly didn't know any particular dates of any discharges, other than that it had been going on for a[]long time and was ongoing.").) "Although specific dates of alleged violations are not necessary for adequate notice, a discrete specific time frame is." *Brandywine*

provision is a "mandatory, not optional, condition precedent for suit," *id.* (quoting *Hallstrom*, 493 U.S. at 26), the Township's Motion for Summary Judgment and McDowell's Cross-Motion for Summary Judgment are **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.[16]

## IV. CONCLUSION

For the reasons set forth above, the Township's Motion for Summary Judgment is **GRANTED**, McDowell's Cross-Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: April 30, 2021

---

*Indus. Paper, Inc. v. Chem. Leaman Tank Lines, Inc.*, Civ. A. No. 97-8121, 1998 WL 855502, at *4 (E.D. Pa. Dec. 10, 1998) (citing *Fried*, 900 F. Supp. at 765; *Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Ctr., Inc.*, 891 F. Supp. 152, 154 (S.D.N.Y. 1995) ("[A]t a bare minimum, some reasonably specific indication of the time-frame when the alleged violations occurred is necessary.")).

[16] To the extent Plaintiff asserts its April 2016 OPRA request provided adequate notice, the Court disagrees. Plaintiff's OPRA request merely sought all documents related to the creation of the Easement on the Property, as well as the installation and maintenance of the accompanying sewer. (ECF No. 24-6 at 126.) The Court does not find such a request relates to the CWA, let alone permitted Defendants to "identify the specific standard, limitation, or order alleged to have been violated[.]" *See* 40 C.F.R. § 135.3(a).